Our final case for today is Socha v. Richardson. Ms. Blyse. Good afternoon. May I please the court? Rachel Blyse on behalf of the appellant Thomas Socha. The only question in this case is whether the Swanson interview, which was withheld from Socha before trial, is material under Brady v. Maryland. To demonstrate that materiality, Socha must demonstrate only that there is a reasonable probability a different outcome in the trial. The biggest hurdle for Socha, in my mind, is that the Swanson interview transcript was brought to the attention of the original trial judge in a post-trial motion for a new trial. And he did not conclude that this would have made a difference to the verdict. And, of course, Socha had a bench trial. So this was the very judge who found him guilty in the first place. How can we say that the Swanson transcript would undermine confidence in the result of the trial when the trial judge himself found the result would have been the same? I think there are two points. First, the trial judge in this case was three years removed from the original trial when he was considering the evidence at issue. The trial in this case was in the summer of 2002. The hearings on the post-conviction motions in which this issue was addressed was in 2005. So the trial judge was not able to consider the evidence that Swanson would give to undermine Holm's credibility directly when he was hearing the testimony from Mr. Holm. And the trial judge had already made up his mind at that point that Mr. Holm was credible on all material aspects. And three years later, I think it would have been hard for him to undo that and think that Mr. Holm was uncredible based on the Swanson interview. If this court were to find that that was important, it would basically mean that there would be no Brady violations in bench trials. At least not in the state of Wisconsin, because in the state of Wisconsin, the original trial judge will always hear the Brady violation after having conducted his own bench trial. And so that would mean that they would just never be able to meet the materiality standard if the judge himself simply said, that would not change my mind. So for those reasons, I don't think it's important necessarily. There might be cases where judges would say, yes, this evidence would make a difference, or there is, under the Brady standard, at least a reasonable chance that it would make a difference. So let's have a do-over. Certainly, Your Honor. And I'm not trying to say that every judge would say that his or her mind was made up. That's just what you said two minutes ago. I'm saying that there could be no Brady violation once the judge had said, this does not influence my original decision. But that's part of the question. Let me turn it around a little bit. Again, here we are again on AEDPA. Holm, who is the person who is affected by this Swanson interview, was one of your less savory people, right? He had pleaded guilty to this murder. His character for truthfulness isn't so great. And the state courts just don't think that this additional evidence is enough to move the needle, basically. And you might have thought it was something, but I actually took a look at all the rest of the evidence tending to show that Mr. Socha was deeply involved in this murder. And there seems to be quite a bit, even independent of Holm. And Holm himself is deeply impeached. So why couldn't the state court, at least not unreasonably, have thought that this was cumulative enough that it did not shake its confidence in the verdict? At least at the court of appeals level, there seems to have been an issue with the evidence that the court actually considered. The court of appeals refers to notes taken during the interview. Those were submitted as Exhibit 10 in the post-conviction motions. The transcript of Socha's, or I'm sorry, Swanson's interview was submitted as Exhibit 14 in the post-conviction motions. There was no notes within the transcript of the interview. But the court of appeals seems to have referred only to notes. There was evidence that those notes were, in fact, not taken during the interview with Mr. Swanson, because Captain Deney, who took the notes, testified that the content of the notes led him to believe that the notes were actually taken during Mr. Socha's trial and not during the Swanson interview. So it seems that the court of appeals may have been considering the wrong evidence when it determined that there was no Brady violation. But returning to Your Honor's question that there was plenty of evidence regarding Mr. Holm, it's important to note that Mr. Holm was the only witness that placed a motive for Mr. Socha to join this conspiracy. Are you sure about that? I mean, looking, we have Mrazik who's talking about Socha's involvements. We have discussions. Socha and Beth, Drews is saying we decided that Lance needed to die. There's some reference to the checks and the drugs and all sorts of things. I think that's an overstatement. Well, Ms. Mrazik testified only to one conversation that she overheard. She said she came into the room during the conversation. She wasn't quite sure what they were talking about, but she assumed that they were talking about Lance Leonard. But Drews testifies. Yeah, right. She talks about that. We also have Drews, though, testifying about getting rid of Leonard.  And Mr. Drews, though, testifies that the sole reason for the murder was this check cashing or forgery scheme. Everybody knew Beth, Thomas, Socha, and Victor all felt that Lance would talk about the checks. And he later also testifies that he had no idea why Mr. Socha would want Lance Leonard to be murdered. And it's very important that the trial court specifically said in rendering his verdict that he was very unpersuaded that any of these people would want to murder Lance Leonard based solely on his knowledge of their involvement in the check cashing scheme. What he was persuaded by was Mr. Holm's testimony that the reason Mr. Leonard was going to be murdered was because Leonard knew too much about Socha's drug dealing. The drug dealing and also the fact that it wasn't just the passing bad checks. It was the stealing of the checks to begin with. Correct. Mr. Holm was the one that committed that theft from the house. And Leonard, according to Swanson, Leonard was there. And Leonard witnessed the theft and that theft was a serious issue for Holm because of all of his prior convictions he felt that he was going to return to prison for a very long time. And so that's really one of the key issues with the Swanson statement was because Holm directly told Swanson I had to murder Lance Leonard because I didn't want to go to jail for a long time. And it's that theft plus the forgery that was going to increase the penalty for Holm. Well, this just gets to the point that's already been made that Holm was more culpable than he was willing to admit in the course of his own proceedings and his testimony against Socha doesn't take anything away from Socha's culpability. And that's essentially what was persuasive to the Wisconsin Court of Appeals in this case. And the Wisconsin Court of Appeals does say, I realize what you're talking about is the notes of a sheriff's deputy who interviewed Roy Swanson. But the court says other aspects of the interview are very damaging to the defense. Swanson says Tom's a major player in the murder. He indicated that Holm told him that Leonard's knowledge of Socha's cocaine theft was a reason for the murder. I mean, this does not reflect well on Socha. It doesn't, but that's not the standard under Brady. It's just whether there's a reasonable probability that the outcome would have been different. Right. Holm was obviously culpable here and more culpable than he admitted on the stand. But the evidence from Swanson would have taken that a step further and completely undermined his credibility. Holm was the only one who testified that any motive for the murder was Socha's drug dealing. The state, in fact, conceded during their closing argument that Drews and Razek knew nothing about the drug dealing and nothing about that aspect of the motive for the murder. And yet the trial court placed that as the entire reason why he found Holm to be credible and found that Socha must have participated in this crime because of the drug dealing. Now, if the court had heard that Mr. Holm made up a threat by Socha, that that threat wasn't true because Swanson said that it wasn't true, and that if he'd heard that Holm had, in fact, a greater motive for the murder than just the property crime, but in fact he was afraid of going to prison for the theft as well, I think that that really would have undermined Holm's testimony and his finger pointing at Socha and could have undermined the confidence in the verdict. Okay. Thank you. And, Mr. O'Brien, welcome back. Thank you. May it please the court. I would invite this court to review the transcript of the Swanson interview. It's in the petitioner's appendix at pages 34-81. I would especially highlight pages 46-48, 61-64, and 78-80. I would suggest after reading this that you might agree with me that very few defense attorneys would touch this with a ten-foot pole. This is more inculpatory of Mr. Socha than just about anything else in this case. Swanson talks with Holm in great length about Socha's involvement in this whole thing and about Socha's motives, Socha's drug dealing, Socha's involvement in the fraudulent check scheme, even Socha's holding a gun to the head of Holm after this thing began to unravel, although Socha told Holm that he only used a BB gun and not a real gun when he held it to Holm's head. And then at the end of that interview where he talks about the short time he was a cellmate with Socha himself. Now, of course, some parts of an interview could be favorable and other parts unfavorable, right? That's correct, but of course the defense... So Brady doesn't say it's got to be 100 percent. No, but the defense would bring out the favorable parts and then the prosecutor would address that. I'm just saying, to be Brady material, we don't have any requirement that it be from start to finish exculpatory. Correct. Yeah. But that gets the materiality test, which is whether there is a reasonable probability of a different outcome had this been disclosed to the defense before trial. And I would say it would not... Largely because the defense probably wouldn't use it, would be afraid to address it, would be afraid to call Mr. Swanson himself for fear of what he would say. But also, there's no reasonable probability when one looks at... I would invite the court to review the decision of Judge Mangerson, which Judge Rovner astutely pointed out was also the judge who reviewed the Brady issue and was able to assess the impact of the Swanson transcript in light of the evidence that he thoroughly considered. And that's in the appendix also, the petitioner's appendix at pages 11 through 33, where the judge went into great detail about the motives and the actions of each one and all of these nefarious characters and all of whom had credibility issues. And that decision would not change and, in fact, did not change. And I think Judge Mangerson was reasonable. And he was not closed-minded at the post-conviction stage, as counsel seems to imply, but was able to assess the impact. And, again, the more inculpatory than exculpatory impact of this affidavit. I would also refer to Mr. Soch's own statements to police after his arrest, where he admitted drug dealing. He admitted participation in the fraudulent check scheme. He also admitted drug dealing to Drews and Victor Holm specifically, which is important, because as Judge Mangerson in his guilty verdict and his fact-finding in support of his guilty verdict pointed out that these people were not only concerned about check-cashing, Drews and Victor Holm were concerned about losing their drug supplier who had control over them and felt the need to protect him. And that was important. So there's a lot going on here. And also, finally, Mr. Holm, in a second statement to police, said, you know, Beth Morazek knows a lot more about this than she's willing to let on. And why am I being charged with intentional murder? Yeah, maybe I was a party to the crime, but I didn't commit the murder. Betraying and misunderstanding Wisconsin's party to a crime law. He failed to grasp that just because he wasn't there when the bullet was put into Mr. Leonard's head and he was shoved into the shallow grave doesn't mean he's not as guilty as the two people who did it. And so he basically admitted being a co-conspirator, thinking that that might result in some mitigation, which, of course, is not true under Wisconsin law. So unless there are any further questions, I'll conclude my remarks. I see none, so thank you very much. Thank you. And Ms. Blais, if you have anything further, that would be fine. Just a brief point, Your Honor. Mr. O'Brien did refer to the inculpatory portions of Mr. Swanson's interview. I would note that those inculpatory portions came from Mr. Holm. So if Mr. Holm is lying about everything, then the case against Mr. Socha completely crumbles. And so that's important. Swanson demonstrates that Mr. Holm is lying. He's concocting threats. He's trying to get himself out of jail. And so it could be that everything that he's telling Mr. Swanson is also a lie. We just don't know, and that evidence should have been available to Mr. Socha to use at trial to undermine Holm's credibility and show that he was lying. Thank you. All right, thank you. And you accepted this appointment as well, did you not? Yes. We thank you very much for your efforts. Thanks as well to the State. The Court will take this case under advisement and will be in recess. Thank you.